**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | **Chapter 11 Case No. 25-02821-TOM11** |
| **INDEPENDENT MEDEQUIP LLC, et al.**[1] | : | |
| **Debtors,** | : | |

| | | |
|---|---|---|
| **INDEPENDENT MEDEQUIP LLC, et al.**[2] | : | **ADV. CASE NO. 26-00006-TOM** |
| **Plaintiffs,** | : | |
| **vs.** | : | |
| **AMERIS BANK, misidentified in the Complaint as its division BALBOA CAPITAL CORPORATION, et al.,**[3] | : | |
| **Defendants.** | : | |

**MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Ameris Bank, misidentified in the Complaint as its division Balboa Capital Corporation (collectively referred to hereinafter as "**Ameris**"), a Defendant in the above-captioned action, moves this Court to dismiss the *Verified Complaint for Injunctive Relief* (the "**Complaint**") as to

[1] The "**Debtors**" in these cases are: Independent Med.Equip, LLC (25-02821-TOMI1); iMed.Equip LLC (25-02823-TOMH ); Viking Medical Supply, LLC (25-02824-TOMI 1); Independent Offices, LLC (25-02826-TOMI 1); MedAlliance LLC (25-02827-TOMI1); Cloud City Medical, LLC (25-02829-TOMI 1); Physician's Choice Medical, LLC (25-02830-TOMI 1); Central Mobility and Rehab Equipment, LLC (25-02831-TOM11); Georgia Medical Supply of Richland, LLC (25-02832-TOMI 1); LifeAid Medical Equipment LLC (25-02834-TOMI 1); and Life Medical Supply LLC (25-02835-TOMI 1).

[2] The "**Plaintiffs**" in this case are: [Independent Med.Equip, LLC (25-02821-TOMI 1); iMed.Equip LLC (25-02823-TOMll ); Viking Medical Supply, LLC (25-02824-TOMI 1); Independent Offices, LLC (25-02826-TOMI 1 ); MedAlliance LLC (25-02827-TOMI 1); Cloud City Medical, LLC (25-02829-TOMI 1); Physician's Choice Medical,LLC (25-02830-TOMI 1 ); Central Mobility and Rehab Equipment, LLC (25-02831-TOMl l ); Georgia Medical Supply of Richland, LLC (25-02832-TOMI 1); LifeAid Medical Equipment LLC (25-02834-TOMI 1); and Life Medical Supply LLC (25-02835-TOMI 1).

[3] In addition to Ameris Bank, the other "**Defendants**" in this case are: Kalamata Capital Group LLC, Newco Capital Group VI LLC, Global Merchant Cash Inc. D/B/A Wall Street Funding, Parkside Funding Group LLC, Retail Capital LLC D/B/A Credibly, Southlake Capital, LLC, Human Care USA, JB&B Capital, Pawnee Leasing Corporation, Philips Medical Capital, Arvest Bank Group Inc., Umpqua Bank, Avtech Capital LLC, Bankfinancial N.A., Channel Partners Capital LLC, NA Vitas Credit Corp., VGM Financial Services, Celtic Bank, Credibly of Arizona LLC, PIRS Capital LLC, FP Leasing Group Inc., ODK Capital LLC, Cadence Bank, The President's Club LLC, Small Business Administration, And IOU Financial LLC.

Ameris. The Complaint seeks to enjoin Ameris from commencing or continuing any and all civil actions and collections activities against Lonnie Blake Dorcey ("**Dorcey**") through confirmation of a plan of reorganization. (Doc. 1 p. 2). However, the Complaint pled no facts showing Ameris holding, asserting, or threatening to assert any claim against Dorcey, and pled no contractual or legal basis upon which Ameris could assert a claim or pursue legal action against Dorcey. As further shown and admitted by Ameris Bank below, neither Ameris nor its division Balboa Capital Corporation hold any guaranty or contractual obligation enforceable against Dorcey with respect to the below-described Claims. Accordingly, Plaintiffs' Complaint alleges no actual case or controversy or cognizable claim for injunctive relief against Ameris. In further support thereof, Ameris states:

## I. BACKGROUND

1. The Complaint misidentifies Ameris Bank as Balboa Capital Corporation. On December 10, 2021, Ameris Bank acquired Balboa Capital Corporation. Balboa Capital Corporation is a division of Ameris Bank. (Ex. 1, Declaration of Marisa Poulos ("**Poulos Decl.**") attached hereto as Exhibit 1, ¶ 4).
2. With respect to the Plaintiffs[4] and Debtors[5] in this case (collectively referred to hereinafter as "**Plaintiffs**"), Ameris's only claim is against IMEDEQUIP, LLC.
3. Ameris holds a claim in the amount of $41,249.94 (as of September 18, 2025) ("**Claim 000**") against the IMEDEQUIP, LLC, arising from the following:
    a. A certain *Equipment Finance Agreement, Agreement # 502492-000* (the "**EFA 000**") IMEDEQUIP, LLC, executed in favor of Ameris for the purpose of financing the purchase more particularly described in the EFA (collectively, the "**EFA 000**

[4] See note 2.
[5] See note 1.

**Equipment**"). Pursuant to the EFA, IMEDEQUIP, LLC, granted Ameris Bank a security interest in the EFA 000 Equipment. (Ex. 1, Poulos Decl., ¶ 5, Ex. A).

4. Ameris holds another claim in the amount of $45,989.82 (as of September 18, 2025) ("**Claim 001**") against the IMEDEQUIP, LLC, arising from the following:
    a. A certain *Equipment Finance Agreement, Agreement # 502492-001* (the "**EFA 001**") IMEDEQUIP, LLC, executed in favor of Ameris for the purpose of financing the purchase of the following equipment: (i) twenty-five (25) BC: Chair, H-250, Blue (fold), Item No. B1002-BL; and (ii) twenty-five (25) H-250 PTS Home Care Kit w/transfer sheets, Item No. B2004T (collectively, the "**001 Equipment**"). (Ex. 1, Poulos Decl., ¶ 6, Ex. B).
5. In relation to the above-referenced Claim 000 and Claim 001 (collectively, the "**Claims**"), Dorcey was neither a borrower nor obligor on either of the Claims. Further, Dorcey has provided no personal guaranty to Ameris with respect to either of the Claims. (Ex. 1, Poulos Decl. ¶ 7).
6. Ameris holds no claim against Dorcey or the Plaintiffs, whether by guaranty or otherwise, arising from the Claims, the transactions giving rise to the Claims, or any other obligation or indebtedness owing Ameris. (Ex. 1, Poulos Decl. ¶¶ 8-9).
7. The Complaint seeks injunctive relief broadly against "Defendants" who may assert claims against Dorcey. (*See generally* Doc. 1).
8. As to Ameris, the Complaint is completely devoid of facts showing Ameris having, asserting, or threatening to assert any claim, presently or in the future, against Dorcey. Furthermore, the Complaint identifies absolutely no contractual or legal basis upon which Ameris could assert a claim against Dorcey. (*See generally* Doc. 1)


Case 26-00006-TOM Doc 40 Filed 02/13/26 Entered 02/13/26 14:06:53 Desc Main Document Page 3 of 27

## II. GROUNDS FOR DISMISSAL OF PLAINTIFFS' COMPLAINT AGAINST AMERIS

Plaintiffs' Complaint should be dismissed as to Ameris because it fails to state a cause of action with respect to Ameris. Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief". Federal Rule of Civil Procedure ("**FRCP**") 8(a)(2), which applies to adversary proceedings through Federal Rule of Bankruptcy Procedure ("**Bankruptcy Rule**") 7008. Bankruptcy Rule 7012(b), which incorporates FRCP 12(b)(6), permits a party to assert by motion a defense "for failure to state a claim upon which relief can be granted." "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir.2000)(*quoting GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir.1993)). All "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir.2002).

Complaints must contain sufficient factual matter to state a claim to relief that is plausible on their face. *In re Tucker*, No. 25-10739-JCO, 2025 WL 3506733, at *2 (Bankr. S.D. Ala. Dec. 5, 2025) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Muhammad v. Option One Mortg. Corp.*, No. 1:10-CV-00096-SC, 2010 WL 2712250, at *2 (S.D. Ala. July 6, 2010) (*quoting Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)(internal citations omitted); *Barber v. Brasfield & Gorrie, Inc.*, No. 2:07-CV-00012-JEO, 2008 WL 11374390, at *10 (N.D. Ala. Aug. 7, 2008)("A plaintiff must include sufficient factual allegations to raise a

right to relief above mere speculation and to raise a reasonable expectation that discovery will reveal evidence of the plaintiff's claim.") As the Eleventh Circuit has stated:

> the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964–65).

*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010). Accordingly, a complaint must be dismissed where claims fail to cross "the line from conceivable to plausible[.]" *Muhammad,* No. 1:10-CV-00096-SC, 2010 WL 2712250, at *2. *See Barber*, No. 2:07-CV-00012-JEO, 2008 WL 11374390, at *10-11.

Plaintiffs' Complaint fails to satisfy the conditions for obtaining injunctive relief as to Ameris. Complainants seeking injunctive relief in the Eleventh Circuit must show the following:

> (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*In re EZ Pay Servs., Inc.*, 389 B.R. 751, 756 (Bankr. M.D. Fla. 2007)(*quoting Four Seasons Hotels and Resorts. B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir.2003)(*quoted in In re Thomas*, 2007 WL 858414, at *2 (Bankr.N.D.Ala.2007))). "The injury must be 'neither remote nor speculative, but actual and imminent'". *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.,* 896 F.2d 1283, 1285 (11th Cir. 1990), *quoting Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir.1989).

Here, the Complaint should be dismissed because it fails to allege any conduct on the part of Ameris (or any Defendant) sufficient to show an actual and imminent injury. Through conclusory statements, the Complaint simply states it seeks "temporary and preliminary relief through the entry of a preliminary injunction enjoining Defendants [which includes Ameris] from

commencing or continuing any civil actions or collection activities against Lonnie Blake Dorcey . . ..” (Doc. 1 ¶ 41). Paragraphs 1 through 38 generally allege facts related to venue, jurisdiction, the principal place of business and service location for each Defendant, the business of the Debtors, the reasons for filing bankruptcy, and one paragraph related to Dorcey’s role in the business of the Debtors. (Doc. 1 ¶¶ 1-38). Paragraphs 39 through 48 appear to be a formalistic recitation of the elements for obtaining an injunction. (Doc. 1 ¶¶ 33-38). However, except for mentioning Ameris’s division Balboa Capital Corporation in paragraph 23 of the Complaint, the Complaint is devoid of any specific allegation tied to Ameris. Instead, the Complaint refers to “Defendants” collectively and makes no meaningful effort to distinguish between any of the Defendants or the Plaintiffs. (*See generally* Doc. 1). While the Complaint sprinkles conclusory statements that the Complaint seeks to enjoin Defendants from commencing or continuing civil actions or collection activities against Dorcey (Doc. 1 ¶¶ introduction, 41, 43), not a single allegation alleges that Ameris holds a claim against or right to pursue Dorcey or that Ameris has, is, or can pursue litigation or collection activities against Dorcey. (*See generally* Doc. 1). Instead, the Complaint takes the leap from describing its business and reorganization efforts to describing purported injuries to Dorcey without ever describing or alleging the specific conduct causing the purported harm. (*See generally* Doc. 1). If no right, claim, or actions are available to Ameris against Dorcey, how is it possible to cause irreparable injury? Plaintiffs leave this question unanswered, justifying dismissal as being too remote or spec*ulative. See Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am.*, 896 F.2d at1285.

Without specifically addressing the rights, claims, and actions of each individual Defendant, the Complaint forces the Court to speculate that each Defendant is actually or imminently engaging in some conduct likely to cause the purported harm. Where speculation is required, the factual allegations are not enough to support a right to relief to prevent an actual and imminent injury. *See Twombly*, 550 U.S. at 555; *Ne. Fla. Chapter of Ass'n of Gen. Contractors of*

*Am.*, 896 F.2d at 1285; *Muhammad*, No. 1:10-CV-00096-SC, 2010 WL 2712250, at *2; Accordingly, because the Complaint fails to allege any conduct by Ameris—much less the right to pursue any litigation or collection activity—against Dorcey beyond mere speculation, the Complaint fails to state a claim for injunctive relief with respect to Ameris.

Furthermore, the Complaint is quintessentially a shotgun pleading, specifically of the type described by the Eleventh Circuit as one that commits the "sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). The Eleventh Circuit has "little tolerance for shotgun pleadings" because, at a minimum, they fail to give litigants "adequate notice of the claims against them and the grounds upon which each claim rests." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)(*quoting Weiland*, 792 F.3d at 1323). Shotgun pleadings "waste scarce judicial resources, 'inexorably broaden[] the scope of discovery,' 'wreak havoc on appellate court dockets,' and 'undermine[] the public's respect for the courts.'" *Vibe Micro, Inc.*, 878 F.3d at 1295 (*quoting* Davis *v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979–80 & n.54 (11th Cir. 2008), *abrogated on other grounds by Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929).

Here, the Complaint falls squarely within this category. For example, throughout the Complaint, Plaintiffs collectively refer to "Defendants" without distinguishing the specific alleged conduct of Ameris from that of the other Defendants, nor does it differentiate between the claims or interests of the individual Plaintiffs. (*See generally* Doc. 1). The Complaint asserts claims for injunctive relief against all Defendants as a group yet fails to identify any specific act by Ameris that would justify such relief. Instead, the allegations are generic and conclusory, such as stating that "[f]ailure to enjoin the Defendants from prosecuting litigation or collection activities against [Dorcey] . . . will have catastrophic and potentially fatal effects . . ." without specifying which

Defendant took what action, when, or how such actions caused actual and imminent harm. (See generally Doc. 1).

Essentially, Debtors are taking the scorched-earth approach by seeking an injunction against a multitude of Defendants regardless of whether the Defendants have any claim against or right to pursue litigation or collection efforts against Dorcey. Allowing the continuation of a suit to enjoin a party from taking actions the party is not entitled to take in the first place wastes judicial resources, undermines the public's respect for the courts, and serves no other purpose but to harass and cause unnecessary trouble and expense for Ameris. This harassment, unnecessary trouble and expense for Ameris—who holds no claim against Dorcey or the Plaintiffs, whether by guaranty or otherwise—outweighs the benefits of any injunction. Ultimately, Ameris couldn't pursue Dorcey with or without an injunction. However, Ameris is forced to respond, at a minimum, to avoid having conclusory facts and allegations being deemed admitted against it. Accordingly, the Complaint should be dismissed for failing to state a claim against Ameris, as it does not provide the requisite factual specificity to put Ameris on notice of the claims against it or the grounds upon which those claims rest, it fails to show the conduct or rights causing the purported injury, and the harm to Ameris outweighs the benefit the injunction serves.

## III. CONCLUSION

Ameris submits that the Complaint fails to state a claim upon which relief can be granted, as it lacks the factual specificity required by *Twombly* and *Iqbal* and does not allege any actionable conduct by Ameris. In fact, as shown by the attached exhibits, Ameris holds no claim against or right to pursue Dorcey individually. (Ex. 1, Poulos Decl. ¶¶ 7-9). Allowing such conclusory and unsupported claims to proceed would undermine judicial economy and the integrity of the judiciary. Accordingly, Ameris respectfully requests the Court to dismiss the Complaint as to Ameris in its entirety.

WHEREFORE Ameris respectfully requests the Court to dismiss the Complaint with respect to Ameris, and grant Ameris such further relief as is equitable and just.

RESPECTFULLY SUBMITTED this 13th day of February, 2026.

**MOORE, CLARKE, DuVALL & RODGERS, P.C.**

*/s/ Stephan A. Ray*
**STEPHAN A. RAY**
Alabama Bar Number: 7664-X39X
*Attorneys for Ameris Bank*
2829 Old Dawson Road
Albany, Georgia 31707
Telephone: 229-888-3338
Facsimile: 229-888-1191
Email: sray@mcdr-law.com

# Exhibit “1”

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **IN RE:**<br><br>**INDEPENDENT MEDEQUIP LLC, et al.**[1]<br><br>**Debtors,** | :<br>:<br>:<br>:<br>: | **Chapter 11 Case No. 25-02821-TOM11** |
| **INDEPENDENT MEDEQUIP LLC, et al.**[2]<br><br>**Plaintiffs,**<br>**vs.**<br><br>**AMERIS BANK, misidentified in the Complaint as its division BALBOA CAPITAL CORPORAITON, et al.,**[3]<br><br>**Defendants.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **ADV. CASE NO. 26-00006-TOM** |

**DECLARATION OF MARISA D. POULOS**

Marisa D. Poulos hereby declares under penalty of perjury as permitted by 28 U.S.C.A. § 1746 that the following is true and correct:

[1] The "**Debtors**" in these cases are: Independent Med.Equip, LLC (25-02821-TOMI1); iMed.Equip LLC (25-02823-TOMH); Viking Medical Supply, LLC (25-02824-TOMI 1); Independent Offices, LLC (25-02826-TOMI 1); MedAlliance LLC (25-02827-TOMI1); Cloud City Medical, LLC (25-02829-TOMI 1); Physician's Choice Medical, LLC (25-02830-TOMI 1); Central Mobility and Rehab Equipment, LLC (25-02831-TOM11); Georgia Medical Supply of Richland, LLC (25-02832-TOMI 1); LifeAid Medical Equipment LLC (25-02834-TOMI 1); and Life Medical Supply LLC (25-02835-TOMI 1).

[2] The "**Plaintiffs**" in this case are: [Independent Med.Equip, LLC (25-02821-TOMI 1); iMed.Equip LLC (25-02823-TOMl l); Viking Medical Supply, LLC (25-02824-TOMI 1); Independent Offices, LLC (25-02826-TOMI 1); MedAlliance LLC (25-02827-TOMI 1); Cloud City Medical, LLC (25-02829-TOMI 1); Physician's Choice Medical,LLC (25-02830-TOMI 1); Central Mobility and Rehab Equipment, LLC (25-02831-TOMl l); Georgia Medical Supply of Richland, LLC (25-02832-TOMI 1); LifeAid Medical Equipment LLC (25-02834-TOMI 1); and Life Medical Supply LLC (25-02835-TOMI 1).

[3] In addition to Ameris Bank, the other "**Defendants**" in this case are: Kalamata Capital Group LLC, Newco Capital Group VI LLC, Global Merchant Cash Inc. D/B/A Wall Street Funding, Parkside Funding Group LLC, Retail Capital LLC D/B/A Credibly, Southlake Capital, LLC, Human Care USA, JB&B Capital, Pawnee Leasing Corporation, Philips Medical Capital, Arvest Bank Group Inc., Umpqua Bank, Avtech Capital LLC, Bankfinancial N.A., Channel Partners Capital LLC, NA Vitas Credit Corp., VGM Financial Services, Celtic Bank, Credibly of Arizona LLC, PIRS Capital LLC, FP Leasing Group Inc., ODK Capital LLC, Cadence Bank, The President's Club LLC, Small Business Administration, And IOU Financial LLC.

1.

My name is Marisa D. Poulos, I am over the age of majority, and I suffer from no physical or mental disability or infirmity that would prevent me from testifying to the matters contained herein. I am testifying to the matters herein based on my own personal knowledge.

2.

I am employed by Plaintiff Ameris Bank (hereinafter "**Plaintiff**" or "**Ameris**"), as an Assistant Vice President, Senior Associate Counsel, and I am authorized to testify on its behalf concerning the matters stated herein. Ameris is a banking corporation chartered and incorporated under the laws of Georgia, has a principal place of business in Atlanta, Georgia, and is registered to do business in the state of Alabama.

3.

In my position as Assistant Vice President, Senior Associate Counsel, my duties include supervising and directing the affairs of Ameris as they relate to the maintenance and collection of certain assets, including the assets and obligations at issue in the above-captioned civil action. This Declaration is based upon (a) my personal knowledge of the facts stated herein, or (b) those facts as they appear in the memorandum, reports, records, files, electronic files, and data compilations ("**Records**") of Ameris with the Records being kept in the regularly conducted business and activity of Ameris, the facts represented in the Records having been entered upon the Records shortly after the instances or events. They represent as part of the regular practice of Ameris, and the facts having been entered upon the Record at the direction of Ameris and under its supervision by a person with knowledge of such facts or using information transmitted by a person with knowledge of such facts. I am familiar with the methods by which the Records are maintained and routinely rely on the Records in the usual course of my business and the business of Ameris.

4.

On December 10, 2021, Ameris Bank acquired Balboa Capital Corporation. Balboa Capital Corporation is a division of Ameris Bank (each of which are collectively referred hereafter as "**Ameris Bank**").

5.

Ameris Bank holds a claim in the amount of $41,249.94 (as of September 18, 2025) ("**Claim 000**") against the IMEDEQUIP, LLC (hereinafter the "**Debtor**"), arising from the following:

a. A certain Equipment Finance Agreement, Agreement # 502492-000 (the "**EFA 000**") Debtor executed in favor of Ameris for the purpose of financing the purchase more particularly described in the EFA (collectively, the "**EFA 000 Equipment**"). Pursuant to the EFA, Debtor granted Ameris Bank a security interest in the EFA 000 Equipment. A true and correct copy of the EFA 000 is attached hereto as Exhibit A.

6.

Ameris Bank holds another claim in the amount of $45,989.82 (as of September 18, 2025) ("**Claim 001**") against the Debtor arising from the following:

a. A certain Equipment Finance Agreement, Agreement # 502492-001 (the "**EFA 001**") Debtor executed in favor of Ameris for the purpose of financing the purchase of the following equipment: (i) twenty-five (25) BC: Chair, H-250, Blue (fold), Item No. B1002-BL; and (ii) twenty-five (25) H-250 PTS Home Care Kit w/transfer sheets, Item No. B2004T (collectively, the "**001 Equipment**"). A true and correct copy of the EFA 001 is attached hereto as Exhibit B.

7.

Ameris holds no other claim against Lonnie Blake Dorcey ("**Dorcey**"). Dorcey was neither a borrower nor obligor on either of Claim 000 or Claim 001 (collectively, the "**Claims**"). Further, Dorcey has provided no personal guaranty to Ameris with respect to either of the Claims.

8.

Ameris holds no claim against Dorcey personally, whether by guaranty or otherwise, arising from the Claims, the transactions giving rise to the Claims, or any other obligation or indebtedness owing Ameris.

9.

Except for IMEDEQUIP, LLC, Ameris holds no claim against any of the other Debtors or Plaintiffs[4], whether by guaranty or otherwise, arising from the Claims, the transactions giving rise to the Claims, or any other obligation or indebtedness owing Ameris.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

**EXECUTED ON THIS ____ DAY OF FEBRUARY 2026.**

______________________________________

**Marisa D. Poulos**
Assistant Vice President, Senior Associate Counsel
Ameris Bank

[4] See Notes 1 and 2.

7.

Ameris holds no other claim against Lonnie Blake Dorcey ("**Dorcey**"). Dorcey was neither a borrower nor obligor on either of Claim 000 or Claim 001 (collectively, the "**Claims**"). Further, Dorcey has provided no personal guaranty to Ameris with respect to either of the Claims.

8.

Ameris holds no claim against Dorcey personally, whether by guaranty or otherwise, arising from the Claims, the transactions giving rise to the Claims, or any other obligation or indebtedness owing Ameris.

9.

Except for IMEDEQUIP, LLC, Ameris holds no claim against any of the other Debtors or Plaintiffs[4], whether by guaranty or otherwise, arising from the Claims, the transactions giving rise to the Claims, or any other obligation or indebtedness owing Ameris.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

**EXECUTED ON THIS 12 DAY OF FEBRUARY 2026.**

Marisa Poulos

**Marisa D. Poulos**
Assistant Vice President, Senior Associate Counsel
Ameris Bank

[4] See Notes 1 and 2.



Case 26-00006-TOM Doc 40 Filed 02/13/26 Entered 02/13/26 14:06:53 Desc Main Document Page 15 of 27

# Exhibit "A"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

BALBOA CAPITAL
A DIVISION OF AMERIS BANK

# EQUIPMENT FINANCING AGREEMENT ("Agreement")

**Agreement #** 502492-000

## DEBTOR INFORMATION

| **Debtor Name: ("you" or "your")** | **Debtor Address:** | **Collateral Location:** (If different from Debtor Address) |
|---|---|---|
| imedequip, LLC | 1201 3rd Avenue N<br>Birmingham, AL 35203 | 1201 3rd Avenue N<br>Birmingham, AL 35203 |
| **Debtor Phone #:** | **Federal Tax ID #:** [redacted]6994 | |

## PAYMENT AND TERMS

| **Full Description of Collateral (Include Make Model, Serial Numbers)** | **Collateral Cost:** | **Initial Payment** (Debtor requests that this amount be electronically debited) |
|---|---|---|
| See Invoices attached hereto as exhibit A1 and incorporated herein by this reference. | $46,320.88 | |
| | **Initial Payment Date:** 04/23/2024 | **Fee $:** $300.00 |
| **Term:** 60<br>(Plus any Prefund or Per diem Period)<br>**Monthly Payment Schedule:** 60@$1,008.00 | | **Total Amount Due:** $300.00 |

**By signing below Debtor hereby irrevocably accepts the Collateral under this Agreement and irrevocably authorizes Creditor to pay the supplier on behalf of the Debtor. The person executing this Agreement is authorized to do so, making this Agreement the valid and binding act of the Debtor. DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.**

| **Debtor:** imedequip, LLC | **Creditor: Ameris Bank dba Balboa Capital** |
|---|---|
| **By:** eSigned By: *Lonnie Dorcey* Feb 22, 2024 8:06:18 AM PST | **By:** eSigned By: *Shawn McMichael* Feb 23, 2024 8:44:24 AM PST |
| **Name and Title:** Lonnie Dorcey Managing Member | **Title: Vice President** |
| **Date:** 02/22/2024 | **Date:** 02/23/2024 |

Copy of Original

**GUARANTY:** You (jointly and severally if more than one) unconditionally guarantee to us and our assigns the payment and performance when due of all of the obligations of the Debtor under the Agreement and all related documents executed by the Debtor. You acknowledge that you have read and understood the Agreement and this Guaranty. You agree that you have an interest in the Debtor, economic or otherwise, and that we would not enter into this Agreement without this Guaranty. We may proceed against you before proceeding against the Debtor, the Collateral or enforce any other remedy. Notwithstanding any changes made to the Agreement in our dealings with Debtor, this Guaranty will remain in effect as changed even if you are not notified of the changes and will remain in effect even if the Agreements are no longer enforceable against the Debtor. You waive all notices to which you may have a right. You agree to pay us all our expenses in enforcing this Guaranty. You may not assign this Guaranty without our written consent. The governing law, jurisdiction and venue provisions of the Agreement shall apply to any action to enforce this Guaranty. You consent to our conducting a credit evaluation of you from all sources, periodically reporting and updating it and sharing the results with others. You agree that we may obtain any information from credit reporting agencies we deem necessary to enforce this Guaranty.

| **Guarantor's Signature:** | **Name:** | **Date:** |
|---|---|---|
| **Guarantor's Signature:** | **Name:** | **Date:** |

**AUTHORIZATION FOR ACH PAYMENTS:** Payment of the Obligations, the Initial Payment/Total Amount Due, the amounts described in the Fees and Taxes section, and any other amounts owed under this Agreement shall be made by electronically withdrawing funds from the bank account listed below in this paragraph, or the account from which the Debtor paid any deposit or fee in conjunction with the execution of this Agreement, or any account from which Debtor paid any obligation under this Agreement, or the account from which a cancelled or voided check provided by the Debtor can be drawn, for the payment of all amounts owed by Debtor from time to time under this Agreement. Debtor initiates each transaction and authorizes Creditor to debit from any of the foregoing accounts the Obligations, the Initial Payment/Total Amount Due, amounts described in the Fees and Taxes section, and any other amounts owed under this Agreement and agrees that Creditor, or its assignees, has the right, but not the obligation, to do so. Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is also authorized to debit any of the foregoing accounts outlined above. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable. Any incorrect charge will be corrected upon notification to Creditor, by either a credit or debit to Debtor's account.

**Bank Name:** on file **Bank City, State:** on file

**ABA Routing No:** [redacted] **Account No.:** on file

**Business Name on Account:** on file

**Street Address on Account:** on file **City, State on Account:** on file

**Authorized Signature:** eSigned By: *Lonnie Dorcey* Feb 22, 2024 8:06:18 AM PST **Name and Title:** Lonnie Dorcey Managing Member


The original document is owned by Balboa Capital Corporation and this copy was created on Feb 23, 2024 08:44:25 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

**TERMS OF EQUIPMENT FINANCING AGREEMENT ("Agreement")**

**Agreement. Ameris Bank dba** Balboa Capital, ("Creditor", "we", "us", or "our") agrees to lend to Debtor and you agree to borrow from us an amount for the financing of the Collateral.

**Commencement Date.** Upon verification of the delivery of the Collateral in a form acceptable to us ("Commencement Date"), you hereby authorize us to disburse the Collateral Cost as indicated on the supplier's invoice.

**Payments; Per Diem Expense Reimbursement.** Amounts received by us under this Agreement will be applied at our discretion to any amount outstanding. Debtor shall repay Creditor the above Monthly Payments in the number of monthly installments indicated above, plus the Per Diem Expense reimbursement as described in this paragraph. The initial Monthly Payment shall be deemed due as of the date indicated above and subsequent Monthly Payments shall be due on the same day of each month thereafter until paid. The first payment we will charge you shall be a pro rata portion of the Monthly Payment based on a daily charge of one-thirtieth (1/30th) or .033333% of the Monthly Payment calculated from the number of days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor. Debtor acknowledges that: a) Creditor may charge up to thirty (30) days of Per Diem; and b) **the Per Diem is not credited against the Monthly Payments and is in addition to the Term indicated above.** All Monthly Payments, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All other amounts due thereunder shall be due upon Debtor's receipt of Creditor's invoice. Advance payments may be applied to the Obligations at Creditor's discretion. In the event Debtor signs this Agreement, but the Agreement is not effected or signed by Creditor, the advanced payments, documentation fee and security deposit may be retained by Creditor so as to compensate Creditor for its processing costs, labor, and other expenses.

**Grant of Security Interest.** You hereby grant to us a security interest in the Collateral and all proceeds to secure all of your obligations under this Agreement.

**Disclaimer of Warranties and Claims; No Agency.** We make no representation or warranty, express or implied, regarding any matter whatsoever including the merchantability or fitness for a particular purpose of the Collateral. This Agreement is irrevocable. ***Your obligation to pay all amounts payable hereunder is non-cancellable, absolute, and unconditional*** and will not be subject to any reduction, setoff, defense, counterclaim, deferment or recoupment for any reason, **even if the Collateral is damaged, destroyed or defective**. You acknowledge you selected the Collateral and the supplier and your supplier is not our agent nor are we their agent. You understand and agree that we are independent and separate from supplier. You acknowledge that no one, including the supplier, has been authorized to waive or change any term or condition of this Agreement. No representation by the supplier as to any matter shall bind us or affect your duty to pay all amounts and perform all obligations hereunder. You will use the Collateral for commercial purposes only, in compliance with the law and not for any personal, family or household use.

**Collateral.** You will not modify or change location of the Collateral without our proper written consent and allow us to inspect it upon our request. At your expense you will maintain the Collateral in good operation condition and repair. You will keep the Collateral free and clear from all liens and encumbrances. Titled Collateral will be titled and/or registered as we direct. You are responsible for any damage or destruction of the Collateral. You will at our election repair the Collateral at your expense or pay to us all amounts then due and owing plus the total of all unpaid Payments for the Term discounted at 3%. You will indemnify and hold us, our member, managers and employees harmless from and against any claims, costs, expenses, damages and liabilities, in any way relating to the Collateral.

**Fees and Taxes.** You agree to pay when due and to hold us harmless from all taxes, interest and penalties relating to this Agreement and the Collateral ("Taxes") and reimburse us for those Taxes we pay on your behalf. If we pay any of the above for you, you agree to reimburse us and to pay us a processing fee for each payment we make on your behalf. In addition, you also agree to pay us any filing fees prescribed by the Uniform Commercial Code or other law and reimburse us for all costs and expenses involved in documenting and servicing this transaction. You further agree to pay us a loan fee on or before the date the first payment is due and a termination fee. You also acknowledge that in addition to the other obligations due under this Agreement, we may assess and you may be required to pay additional taxes and/or fees, including an invoice fee. Such fees may not only cover our costs they may also include a profit. You will indemnify us against the loss of any tax benefits arising out of your acts or omissions.

**Insurance.** During the Term you will maintain insurance we specify on the Collateral. If you do not provide us satisfactory proof of insurance we may, but are not required, to buy such insurance for our benefit and add charges which any result in a higher premium you would pay if you obtained insurance, plus an interest charge. At our option, in lieu of obtaining or continuing insurance, we may require you to pay a monthly additional fee up to 2% of the cost of the Collateral. This fee is not calculated with reference to additional risk nor constitutes additional profit for us, but represents the basis on which we are willing to forbear from exercising remedies and continue this Agreement without the required insurance. You will receive no insurance coverage and will not be released from any obligation under this Agreement. We are not selling insurance. We will cease charging the additional fee or billing for insurance 30 days after you provide satisfactory proof of insurance.

**Initial:** Inits LD


The original document is owned by Balboa Capital Corporation and this copy was created on Feb 23, 2024 08:44:25 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

**Default and Remedies.** If any one of the following occurs, you will be in default: (i) you fail to pay any amount under this Agreement when due; (ii) you cease doing business, admit your inability to pay your debts, or you file or have filed against you a petition under the Bankruptcy Code; (iii) you breach any other obligation contained in this Agreement; or (iv) any of the above events of default occur with respect to any Guarantor. Upon your default, we may do any or all of the following: (a) terminate this Agreement; (b) take possession of the Collateral; you irrevocably waive any security required of us in the event we take possession of the Collateral and require you to deliver it to us at your expense to a location designated by us; (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us; (d) sell, dispose of, hold, or lease the Collateral; (e) Creditor may sue for and recover from Debtor the sum of: (1) all unpaid Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (f) exercise any other right or remedy which may be available to us under applicable law. You shall reimburse us for all costs we incur in enforcing our rights including our attorney's fees and costs of repossession, repair, storage and remarketing of the Collateral. A waiver of default will not be a waiver of any other subsequent default.

**General.** This Agreement **will be governed and construed under the laws of the State of California** without reference to its principle of conflicts of laws and is deemed to have been made and performed in Orange County, CA. **You submit to the exclusive and mandatory jurisdiction of CA** and agree that the CA state courts and/or the United States District Court for the Central District of California, Santa Ana Division, will have exclusive and mandatory jurisdiction over any action or proceeding to enforce this Agreement or any action or proceeding arising out of this Agreement. **We may at our sole discretion commence any action seeking judicial intervention to recover the Collateral in any State Court where the Collateral may be physically located.** You waive any objection based on improper venue and/or forum non-conveniens. You irrevocably grant us the right to make such filings under the Uniform Commercial Code as we deem necessary. You agree to pay us interest on all past due amounts at the lower of 1.5% per month or the highest rate allowed by law. You will not assign your rights under this Agreement, or permit the Collateral to be used by anyone other than you. We may assign this Agreement, in whole or in part, without notice to you or without your consent. You agree that our assignee will have the same rights and benefits that we have now, but will not be subject to any claims, defenses or set offs that you may have against us. **This Agreement constitutes the entire agreement between the parties, and supersede all prior negotiations, written or oral, including any written offer or proposal describing and/or summarizing the terms of any proposed lease/financing. This Agreement cannot be modified except in writing signed by the party against whom enforcement is sought. Debtor represents to Creditor that it shall not allege in any court proceeding that the parties entered into an oral modification of this Agreement, and further agrees, that in any event, any such oral modification shall not be enforceable unless it is reduced to a writing signed by the party against whom enforcement is sought.** You represent and warrant to us that all information conveyed to us in connection with this Agreement and all related documents whether by you, a guarantor, a supplier or any other person, is true, accurate, complete and not misleading. This Agreement may be executed in separate counterparts which together shall be the same instrument. You agree this Agreement may be signed electronically pursuant to the Electronic Signatures in Global and National Commerce Act and other applicable law. All fees may not only cover our costs but may include a profit. You may not repay this Agreement without our prior written consent. If Debtor constitutes more than one person, the liability of each shall be joint and several. Delivery of this Agreement bearing a facsimile signature, electronic signature, or other signature which is not in ink, shall have the same force and effect as if this document bore an original ink signature. The electronic transmission of this Agreement shall have the same force and effect as delivery of an original and shall be legally admissible under the best or original evidence rule. Any notice given hereunder shall be in writing and deemed given two business days after being deposited with the US Postal Service, first class postage prepaid, and addressed to the Debtor at its address set for above or to Creditor at 575 Anton Blvd., 12th Floor, Costa Mesa, CA 92626, or such other address given to the sender by written notice.

Copy of Original

**Initial:** Inits LD


The original document is owned by Balboa Capital Corporation and this copy was created on Feb 23, 2024 08:44:25 AM.

EXHIBIT A1

drive | DeVilbiss HEALTHCARE

# Invoice

## BILLING ADDRESS

iMedEquip, LLC
1201 3rd Ave N.
Birmingham, AL 35203
USA

## Information

| | |
|---|---|
| **Customer Number** | 122386 |
| **Invoice Number** | 33268550 |
| **Invoice Date** | 01/29/2024 |
| **Purchase Order No.** | 1.4.24.CAP |
| **Ship Via** | |
| **Delivery Number** | 55310987 |
| **Sales Order Number** | 11240646 |
| **Sales Order Date** | 01/04/2024 |
| **Sales Rep** | 312 Josh Burke - N FL |
| **Payment Terms** | NET 90 DAYS |
| **Incoterms** | FCA Seller's Facility |
| **Tracking Number** | 107758930401 |

## Shipping Address

iMedEquip, LLC
1201 3rd Ave N.
Birmingham, AL 35203
USA

| | | | | | |
|---|---|---|---|---|---|
| 14001E | PP Sys,Dlx,Variable Pressure,1/ea 4 | EA | 20 | $ | 896.40 |
| 1025DS | 10L Compact Concentrator, 110v, 1/ea | EA | 10 | $ | 8,776.40 |
| 14003 | APP Pad Only, 1/ea, RTL | EA | 20 | $ | 324.40 |
| 12202KD-4 | Bath Seat w/ Back, KD, 4/cs | CV | 5 | $ | 494.90 |
| 795B | Duet Rollator/TransportChair,Blue,1/cs | CV | 3 | $ | 404.85 |
| 15544F | Foot Board,15030/15033,Delta Bed,1ea | EA | 18 | $ | 2,322.00 |
| 15770 | GRAVITY 7 MATTRESS, 80",1/EA | EA | 20 | $ | 2,713.40 |
| 15021BV-LW | Half Side Rail,42in/48/54 LW Baribed,1pr | BX | 4 | $ | 309.16 |
| 15033HC-G | HandControlFullUltraLight,1ea | EA | 8 | $ | 237.68 |
| 15544H | HeadBoard,15030/15033,Delta,Bed,1ea | EA | 18 | $ | 2,322.00 |
| 18600 | Heavy Duty Suction Mach1/cs | CV | 15 | $ | 2,013.00 |
| 15300LW | Lightweight Full Elec 42" Bariatric Bed | BX | 4 | $ | 3,564.28 |
| 15037MN | Motor,Head/Footspring,15033/15235,1/ea | EA | 8 | $ | 1,039.60 |
| RTL10266DT | Nitro Duet, Red, 1 Ea. | EA | 2 | $ | 561.08 |
| RTL10266BK | Nitro Rollator, Black frame,1EA | EA | 1 | $ | 178.30 |
| 13069 | OVERBED TBL W/PLASTIC TOP SLV VEIN, 1/E | EA | 20 | $ | 1,301.40 |
| 13002SV-6 | Oxygen Cart, Silver Vein, Adj, 6/cs | CV | 4 | $ | 323.04 |
| 13023SV | Patient Lift,New Style,Silver Vein,1/cs | CV | 3 | $ | 987.00 |
| 18080 | Power Nebulizer, Ultra, 1/ea, 6/cv | CV | 5 | $ | 548.10 |
| RTL12A001-GR | PreserveTech Swivel Bath Chair, 1EA,1/CV | EA | 3 | $ | 248.85 |
| 18302GN | Reg, Gr, 0-15L, CGA870, Barb, 1/ea | EA | 20 | $ | 263.80 |
| R726BK | Rollator, 6" 4-Wheel Alum, Black | CV | 1 | $ | 68.94 |
| R726RD | Rollator,6" 4-Wheel Alum, Red | CV | 1 | $ | 68.94 |
| 1500SC-42-FB | ShearCare 1500 Mattress 42x80, 1/ea | EA | 4 | $ | 1,126.56 |
| SSP218DDA-SF | SlvrSprt2,18inSvrVeinDetDsk,SwgFt,1/cs | CV | 10 | $ | 1,200.00 |
| SSP220DDA-SF | SlvrSprt2,20in SlvrVeinDetDsk,SwgFt,1/c | CV | 10 | $ | 1,210.00 |
| 12011KD-1 | Transfer Bench KD,Tool Free, 1/cs | CV | 10 | $ | 532.00 |
| 15033BV-FR | Ultra Lt.Full Elec.Bedw/Full R | CV | 20 | $ | 9,285.80 |
| 11120SV-1F | Wheeled Commode with Footrests, 1/CV | CV | 20 | $ | 2,999.00 |
| **Send All Payments To:** | | | | **$** | **46,320.88** |

Drive Medical SPV, LLC
dba Drive DeVilbiss Healthcare
29427 Network Place
Chicago, IL 60673-1294

# Exhibit "B"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

BALBOA CAPITAL
A DIVISION OF AMERIS BANK

# EQUIPMENT FINANCING AGREEMENT ("Agreement")

Agreement # 502492-001

## DEBTOR INFORMATION

| Debtor Name: ("you" or "your") | Debtor Address: | Collateral Location: (If different from Debtor Address) |
|---|---|---|
| imedequip, LLC | 1201 3rd Avenue N<br>Birmingham, AL 35203 | 1201 3rd Avenue N<br>Birmingham, AL 35203 |
| Debtor Phone #: | Federal Tax ID #: [redacted]6994 | |

## PAYMENT AND TERMS

| Full Description of Collateral (Include Make Model, Serial Numbers) | Collateral Cost / Initial Payment Date | Initial Payment (Debtor requests that this amount be electronically debited) |
|---|---|---|
| See Invoices attached hereto as exhibit A1 and incorporated herein by this reference. | Collateral Cost: $50,000.00<br>Initial Payment Date: 05/27/2024 | Fee $: $250.00 |
| Term: 60<br>(Plus any Prefund or Per diem Period)<br>Monthly Payment Schedule: 60@$1,099.63 | | Total Amount Due: $250.00 |

Copy of Original

**By signing below Debtor hereby irrevocably accepts the Collateral under this Agreement and irrevocably authorizes Creditor to pay the supplier on behalf of the Debtor. The person executing this Agreement is authorized to do so, making this Agreement the valid and binding act of the Debtor. DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.**

| Debtor: imedequip, LLC | Creditor: Ameris Bank dba Balboa Capital |
|---|---|
| By: eSigned By: Lonnie Dorcey Mar 29, 2024 9:01:52 AM PDT | By: eSigned By: Shawn McMichael Mar 29, 2024 11:14:35 AM PDT |
| Name and Title: Lonnie Dorcey Managing Member | Title: Vice President |
| Date: 03/29/2024 | Date: 03/29/2024 |

**GUARANTY:** You (jointly and severally if more than one) unconditionally guarantee to us and our assigns the payment and performance when due of all of the obligations of the Debtor under the Agreement and all related documents executed by the Debtor. You acknowledge that you have read and understood the Agreement and this Guaranty. You agree that you have an interest in the Debtor, economic or otherwise, and that we would not enter into this Agreement without this Guaranty. We may proceed against you before proceeding against the Debtor, the Collateral or enforce any other remedy. Notwithstanding any changes made to the Agreement in our dealings with Debtor, this Guaranty will remain in effect as changed even if you are not notified of the changes and will remain in effect even if the Agreements are no longer enforceable against the Debtor. You waive all notices to which you may have a right. You agree to pay us all our expenses in enforcing this Guaranty. You may not assign this Guaranty without our written consent. The governing law, jurisdiction and venue provisions of the Agreement shall apply to any action to enforce this Guaranty. You consent to our conducting a credit evaluation of you from all sources, periodically reporting and updating it and sharing the results with others. You agree that we may obtain any information from credit reporting agencies we deem necessary to enforce this Guaranty.

| Guarantor's Signature: | Name: | Date: |
|---|---|---|
| Guarantor's Signature: | Name: | Date: |

**AUTHORIZATION FOR ACH PAYMENTS:** Payment of the Obligations, the Initial Payment/Total Amount Due, the amounts described in the Fees and Taxes section, and any other amounts owed under this Agreement shall be made by electronically withdrawing funds from the bank account listed below in this paragraph, or the account from which the Debtor paid any deposit or fee in conjunction with the execution of this Agreement, or any account from which Debtor paid any obligation under this Agreement, or the account from which a cancelled or voided check provided by the Debtor can be drawn, for the payment of all amounts owed by Debtor from time to time under this Agreement. Debtor initiates each transaction and authorizes Creditor to debit from any of the foregoing accounts the Obligations, the Initial Payment/Total Amount Due, amounts described in the Fees and Taxes section, and any other amounts owed under this Agreement and agrees that Creditor, or its assignees, has the right, but not the obligation, to do so. Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is also authorized to debit any of the foregoing accounts outlined above. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable. Any incorrect charge will be corrected upon notification to Creditor, by either a credit or debit to Debtor's account.

**Bank Name:** United Community **Bank City, State:** Birmingham, AL

**ABA Routing No:** [redacted] **Account No.:** [redacted]9033

**Business Name on Account:** imedequip, LLC

**Street Address on Account:** 1201 3rd Avenue N **City, State on Account:** Birmingham, AL 35203

**Authorized Signature:** eSigned By: Lonnie Dorcey Mar 29, 2024 9:01:52 AM PDT **Name and Title:** Lonnie Dorcey Managing Member


The original document is owned by Balboa Capital Corporation and this copy was created on Mar 29, 2024 11:14:36 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

## TERMS OF EQUIPMENT FINANCING AGREEMENT ("Agreement")

**Agreement. Ameris Bank dba** Balboa Capital, ("Creditor", "we", "us", or "our") agrees to lend to Debtor and you agree to borrow from us an amount for the financing of the Collateral.

**Commencement Date.** Upon verification of the delivery of the Collateral in a form acceptable to us ("Commencement Date"), you hereby authorize us to disburse the Collateral Cost as indicated on the supplier's invoice.

**Payments; Per Diem Expense Reimbursement.** Amounts received by us under this Agreement will be applied at our discretion to any amount outstanding. Debtor shall repay Creditor the above Monthly Payments in the number of monthly installments indicated above, plus the Per Diem Expense reimbursement as described in this paragraph. The initial Monthly Payment shall be deemed due as of the date indicated above and subsequent Monthly Payments shall be due on the same day of each month thereafter until paid. The first payment we will charge you shall be a pro rata portion of the Monthly Payment based on a daily charge of one-thirtieth (1/30th) or .033333% of the Monthly Payment calculated from the number of days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor. Debtor acknowledges that: a) Creditor may charge up to thirty (30) days of Per Diem; and b) **the Per Diem is not credited against the Monthly Payments and is in addition to the Term indicated above.** All Monthly Payments, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All other amounts due thereunder shall be due upon Debtor's receipt of Creditor's invoice. Advance payments may be applied to the Obligations at Creditor's discretion. In the event Debtor signs this Agreement, but the Agreement is not effected or signed by Creditor, the advanced payments, documentation fee and security deposit may be retained by Creditor so as to compensate Creditor for its processing costs, labor, and other expenses.

**Grant of Security Interest.** You hereby grant to us a security interest in the Collateral and all proceeds to secure all of your obligations under this Agreement.

**Disclaimer of Warranties and Claims; No Agency.** We make no representation or warranty, express or implied, regarding any matter whatsoever including the merchantability or fitness for a particular purpose of the Collateral. This Agreement is irrevocable. ***Your obligation to pay all amounts payable hereunder is non-cancellable, absolute, and unconditional*** and will not be subject to any reduction, setoff, defense, counterclaim, deferment or recoupment for any reason, **even if the Collateral is damaged, destroyed or defective**. You acknowledge you selected the Collateral and the supplier and your supplier is not our agent nor are we their agent. You understand and agree that we are independent and separate from supplier. You acknowledge that no one, including the supplier, has been authorized to waive or change any term or condition of this Agreement. No representation by the supplier as to any matter shall bind us or affect your duty to pay all amounts and perform all obligations hereunder. You will use the Collateral for commercial purposes only, in compliance with the law and not for any personal, family or household use.

**Collateral.** You will not modify or change location of the Collateral without our proper written consent and allow us to inspect it upon our request. At your expense you will maintain the Collateral in good operation condition and repair. You will keep the Collateral free and clear from all liens and encumbrances. Titled Collateral will be titled and/or registered as we direct. You are responsible for any damage or destruction of the Collateral. You will at our election repair the Collateral at your expense or pay to us all amounts then due and owing plus the total of all unpaid Payments for the Term discounted at 3%. You will indemnify and hold us, our member, managers and employees harmless from and against any claims, costs, expenses, damages and liabilities, in any way relating to the Collateral.

**Fees and Taxes.** You agree to pay when due and to hold us harmless from all taxes, interest and penalties relating to this Agreement and the Collateral ("Taxes") and reimburse us for those Taxes we pay on your behalf. If we pay any of the above for you, you agree to reimburse us and to pay us a processing fee for each payment we make on your behalf. In addition, you also agree to pay us any filing fees prescribed by the Uniform Commercial Code or other law and reimburse us for all costs and expenses involved in documenting and servicing this transaction. You further agree to pay us a loan fee on or before the date the first payment is due and a termination fee. You also acknowledge that in addition to the other obligations due under this Agreement, we may assess and you may be required to pay additional taxes and/or fees, including an invoice fee. Such fees may not only cover our costs they may also include a profit. You will indemnify us against the loss of any tax benefits arising out of your acts or omissions.

**Insurance.** During the Term you will maintain insurance we specify on the Collateral. If you do not provide us satisfactory proof of insurance we may, but are not required, to buy such insurance for our benefit and add charges which any result in a higher premium you would pay if you obtained insurance, plus an interest charge. At our option, in lieu of obtaining or continuing insurance, we may require you to pay a monthly additional fee up to 2% of the cost of the Collateral. This fee is not calculated with reference to additional risk nor constitutes additional profit for us, but represents the basis on which we are willing to forbear from exercising remedies and continue this Agreement without the required insurance. You will receive no insurance coverage and will not be released from any obligation under this Agreement. We are not selling insurance. We will cease charging the additional fee or billing for insurance 30 days after you provide satisfactory proof of insurance.

Copy of Original

**Initial:** Inits LD


The original document is owned by Balboa Capital Corporation and this copy was created on Mar 29, 2024 11:14:36 AM.

**Default and Remedies.** If any one of the following occurs, you will be in default: (i) you fail to pay any amount under this Agreement when due; (ii) you cease doing business, admit your inability to pay your debts, or you file or have filed against you a petition under the Bankruptcy Code; (iii) you breach any other obligation contained in this Agreement; or (iv) any of the above events of default occur with respect to any Guarantor. Upon your default, we may do any or all of the following: (a) terminate this Agreement; (b) take possession of the Collateral; you irrevocably waive any security required of us in the event we take possession of the Collateral and require you to deliver it to us at your expense to a location designated by us; (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us; (d) sell, dispose of, hold, or lease the Collateral; (e) Creditor may sue for and recover from Debtor the sum of: (1) all unpaid Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (f) exercise any other right or remedy which may be available to us under applicable law. You shall reimburse us for all costs we incur in enforcing our rights including our attorney's fees and costs of repossession, repair, storage and remarketing of the Collateral. A waiver of default will not be a waiver of any other subsequent default.

**General.** This Agreement **will be governed and construed under the laws of the State of California** without reference to its principle of conflicts of laws and is deemed to have been made and performed in Orange County, CA. **You submit to the exclusive and mandatory jurisdiction of CA** and agree that the CA state courts and/or the United States District Court for the Central District of California, Santa Ana Division, will have exclusive and mandatory jurisdiction over any action or proceeding to enforce this Agreement or any action or proceeding arising out of this Agreement. **We may at our sole discretion commence any action seeking judicial intervention to recover the Collateral in any State Court where the Collateral may be physically located.** You waive any objection based on improper venue and/or forum non-conveniens. You irrevocably grant us the right to make such filings under the Uniform Commercial Code as we deem necessary. You agree to pay us interest on all past due amounts at the lower of 1.5% per month or the highest rate allowed by law. You will not assign your rights under this Agreement, or permit the Collateral to be used by anyone other than you. We may assign this Agreement, in whole or in part, without notice to you or without your consent. You agree that our assignee will have the same rights and benefits that we have now, but will not be subject to any claims, defenses or set offs that you may have against us. **This Agreement constitutes the entire agreement between the parties, and supersede all prior negotiations, written or oral, including any written offer or proposal describing and/or summarizing the terms of any proposed lease/financing. This Agreement cannot be modified except in writing signed by the party against whom enforcement is sought. Debtor represents to Creditor that it shall not allege in any court proceeding that the parties entered into an oral modification of this Agreement, and further agrees, that in any event, any such oral modification shall not be enforceable unless it is reduced to a writing signed by the party against whom enforcement is sought.** You represent and warrant to us that all information conveyed to us in connection with this Agreement and all related documents whether by you, a guarantor, a supplier or any other person, is true, accurate, complete and not misleading. This Agreement may be executed in separate counterparts which together shall be the same instrument. You agree this Agreement may be signed electronically pursuant to the Electronic Signatures in Global and National Commerce Act and other applicable law. All fees may not only cover our costs but may include a profit. You may not repay this Agreement without our prior written consent. If Debtor constitutes more than one person, the liability of each shall be joint and several. Delivery of this Agreement bearing a facsimile signature, electronic signature, or other signature which is not in ink, shall have the same force and effect as if this document bore an original ink signature. The electronic transmission of this Agreement shall have the same force and effect as delivery of an original and shall be legally admissible under the best or original evidence rule. Any notice given hereunder shall be in writing and deemed given two business days after being deposited with the US Postal Service, first class postage prepaid, and addressed to the Debtor at its address set for above or to Creditor at 575 Anton Blvd., 12th Floor, Costa Mesa, CA 92626, or such other address given to the sender by written notice.

**Initial:** Inits LD

Copy of Original


The original document is owned by Balboa Capital Corporation and this copy was created on Mar 29, 2024 11:14:36 AM.

HUMAN CARE
Your Life. Your Way.

# Invoice

| Date | Page |
| --- | --- |
| March 13, 2024 | 1 |
| **Invoice Number** | |
| IN0038485 | |

**Entered By:** IDALISE

8006 Cameron Rd, Suite K
Austin, TX, 78754
USA
Phone: 512-476-7199

**Sold To:**
iMedEquip LLC
1201 3rd Ave N.
Birmingham, AL 35203
USA

**Ship To:**
iMedEquip LLC
1201 3rd Ave N.
Birmingham, AL 35203
USA

| Order No. | Order Date | Customer No. | Salesperson | PO Number | Ship Via | Terms |
| --- | --- | --- | --- | --- | --- | --- |
| ORD0026576 | Jan 29, 2023 | 20555 | R. Vasconcellos | 102924P | | Net 0 |

| Qty. Ord. | Qty. Shp. | Qty. B/O | Item Number | Description | Unit Price | UOM | Extended Price |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 25 | 25 | 0.0 | B1002-BL | BC: Chair,H-250,Blue (fold) | 2,000.00 | EACH | 50,000.00 |
| 25 | 25 | 0.0 | B2004T | H-250 PTS Home Care Kit w/transfer sheets | 0.00 | each | 0.00 |

**Tax summary:**

**Delivery Acceptance:**
Please notify Human Care of any discrepancy in any shipment within ten (10) working days of receipt of related invoice or within three (3) working days of receipt of goods. Otherwise Human Care deems the distributor to have accepted the delivery.

| | |
| --- | --- |
| **Subtotal** | **50,000.00** |
| **Total sales tax** | **0.00** |
| **Total amount** | **50,000.00** |
| **Less payment** | **0.00** |
| **Amount due** | **50,000.00** |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
BIRMINGHAM DIVISION

| | | |
|---|---|---|
| **In Re:** | : | |
| | : | **CHAPTER 11 CASE NO.:** |
| **INDEPENDENT MEDEQUIP, LLC, et al.[1],** | : | **25-02821-TOM11** |
| | : | |
| **Debtors.** | : | |

| | | |
|---|---|---|
| **INDEPENDENT MEDEQUIP LLC, et al[2].** | : | **ADV. CASE NO.:** |
| | : | **26-00006-TOM** |
| **Plaintiffs,** | : | |
| **vs.** | : | |
| | : | |
| **AMERIS BANK, misidentified in the** | : | |
| **Complaint as its division** | : | |
| **BALBOA CAPITAL CORPORATION, et al.[3],** | : | |
| | : | |
| **Defendants.** | : | |

## CERTIFICATE OF SERVICE

THIS WILL CERTIFY that the following have been served a copy of the foregoing *Motion to Dismiss and Incorporated Memorandum of Law* by electronic service through CM/ECF and/or by depositing a copy in the United States Mail with sufficient postage affixed thereon to assure delivery to the following:

Stuart H. Memory Counsel for Plaintiffs
Memory, Memory & Causby, LLC
PO Box 4054
Montgomery, AL 36103
smemory@memorylegal.com; pburn@memorylegal.com; wcausby@memorylegal.com; mmeldrum@memorylegal.com; cwilhoit@memorylegal.com; athomas@memorylegal.com

[Signature on Next Page]

[1] The "**Debtors**" in these cases are: Independent Med.Equip, LLC (25-02821-TOMI1); iMed.Equip LLC (25-02823-TOMH ); Viking Medical Supply, LLC (25-02824-TOMI 1); Independent Offices, LLC (25-02826-TOMI 1); MedAlliance LLC (25-02827-TOMI1); Cloud City Medical, LLC (25-02829-TOMI 1); Physician's Choice Medical, LLC (25-02830-TOMI 1); Central Mobility and Rehab Equipment, LLC (25-02831-TOM11); Georgia Medical Supply of Richland, LLC (25-02832-TOMI 1); LifeAid Medical Equipment LLC (25-02834-TOMI 1); and Life Medical Supply LLC (25-02835-TOMI 1).

[2] The "**Plaintiffs**" in this case are: [Independent Med.Equip, LLC (25-02821-TOMI 1); iMed.Equip LLC (25-02823-TOMIl ); Viking Medical Supply, LLC (25-02824-TOMI 1); Independent Offices, LLC (25-02826-TOMI 1 ); MedAlliance LLC (25-02827-TOMI 1); Cloud City Medical, LLC (25-02829-TOMI 1); Physician's Choice Medical,LLC (25-02830-TOMI 1 ); Central Mobility and Rehab Equipment, LLC (25-02831-TOMl 1 ); Georgia Medical Supply of Richland, LLC (25-02832-TOMI 1); LifeAid Medical Equipment LLC (25-02834-TOMI 1); and Life Medical Supply LLC (25-02835-TOMI 1).

[3] In addition to Ameris Bank, the other "**Defendants**" in this case are: Kalamata Capital Group LLC, Newco Capital Group VI LLC, Global Merchant Cash Inc. D/B/A Wall Street Funding, Parkside Funding Group LLC, Retail Capital LLC D/B/A Credibly, Southlake Capital, LLC, Human Care USA, JB&B Capital, Pawnee Leasing Corporation, Philips Medical Capital, Arvest Bank Group Inc., Umpqua Bank, Avtech Capital LLC, Bankfinancial N.A., Channel Partners Capital LLC, NA Vitas Credit Corp., VGM Financial Services, Celtic Bank, Credibly of Arizona LLC, PIRS Capital LLC, FP Leasing Group Inc., ODK Capital LLC, Cadence Bank, The President's Club LLC, Small Business Administration, And IOU Financial LLC.

This the 13th day of February, 2026.

**MOORE, CLARKE, DuVALL & RODGERS, P.C.**

*/s/ Stephan A. Ray*
**STEPHAN A. RAY**
Georgia State Bar No.: 649087
*Attorneys for Ameris Bank*